UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

GEORGE CALVIN PAYNE, III,

    Petitioner,

v.                                                                  Case No. 2:09-cv-253
                                                                     HON. GORDON J. QUIST

CATHERINE BAUMAN,

    Respondent.

_____/

## REPORT AND RECOMMENDATION

Petitioner George Calvin Payne, III, filed this petition for writ of habeas corpus challenging his prison sentence of 450 months to 50 years imprisonment for two counts of armed robbery (MCL 750.529). The respondent has filed an answer and has complied with Rule 5 of the Rules Governing Section 2254 Cases in the United States District Courts. The parties have briefed the issues and the matter is now ready for decision.

Petitioner raises the following claims:

I. Petitioner's convictions should be overturned because there was insufficient credible evidence to prove that the Petitioner committed the crimes charged, thereby violating his due process rights.

II. The state courts denied the petitioner a fair trial and his due process rights by: (1) failing to suppress evidence obtained in violation of the petitioner's constitutional and statutory rights to be free from unreasonable searches and seizures; (2) various errors in admitting evidence; (3) taking no independent actions regarding the prosecutor's errors; and (4) denying the defendant's motion to correct invalid sentence/resentencing.

III. The prosecutor's actions denied the petitioner a fair trial and his due process rights under the Michigan and Federal Constitutions.

>IV. The Petitioner's sentence was based on inaccurate information, i.e., improper scoring of the legislatively imposed sentencing guidelines, the use of an inaccurate burden of proof and insufficient facts, thereby violating his due process rights.
>
>V. Petitioner's guidelines were incorrectly scored, resulting in a substantially higher sentence which denied him due process of law.
>
>VI. Petitioner received ineffective assistance of counsel.

In April of 1996, the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) became effective. Because this petition was filed after the effective date of the AEDPA, this Court must follow the standard of review established in that statute. Pursuant to the AEDPA, an application for writ of habeas corpus on behalf of a person who is incarcerated pursuant to a state conviction cannot be granted with respect to any claim that was adjudicated on the merits in state court unless the adjudication: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." 28 U.S.C. § 2254(d).

The AEDPA limits the source of law to cases decided by the United States Supreme Court. 28 U.S.C. § 2254(d). This provision marks a "significant change" and prevents the district court from looking to lower federal court decisions in determining whether the state decision is contrary to, or an unreasonable application of, clearly established federal law. *Herbert v. Billy*, 160 F.3d 1131, 1134 (6th Cir. 1998). To justify a grant of habeas corpus relief under this provision of the AEDPA, a federal court must find a violation of law "clearly established" by holdings of the Supreme Court, as opposed to its dicta, as of the time of the relevant state court decision. *Williams v. Taylor*, 529 U.S. 362, 412 (2000). Recently, the Supreme Court held that a decision of the state court is "contrary to" such clearly established federal law "if the state court arrives at a conclusion

opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts." *Id.* A state court decision will be deemed an "unreasonable application" of clearly established federal law "if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* A federal habeas court may not find a state adjudication to be "unreasonable" "simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 412. Rather, the application must also be "unreasonable." *Id.* Further, the habeas court should not transform the inquiry into a subjective one by inquiring whether all reasonable jurists would agree that the application by the state court was unreasonable. *Id.* at 410 (disavowing *Drinkard v. Johnson*, 97 F.3d 751, 769 (5th Cir. 1996)). Rather, the issue is whether the state court's application of clearly established federal law is "objectively unreasonable." *Williams*, 529 U.S. at 409.

The AEDPA requires heightened respect for state factual findings. *Herbert v. Billy,* 160 F.3d 1131, 1134 (6th Cir. 1998). The habeas corpus statute has long provided that the factual findings of the state courts, made after a hearing, are entitled to a presumption of correctness. This presumption has always been accorded to findings of state appellate courts, as well as the trial court. *See Sumner v. Mata*, 449 U.S. 539, 546 (1981); *Smith v. Jago*, 888 F.2d 399, 407 n.4 (6th Cir. 1989), *cert. denied*, 495 U.S. 961 (1990). Under the AEDPA, a determination of a factual issue made by a state court is presumed to be correct. The petitioner has the burden of rebutting the presumption of correctness by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *see also Warren v. Smith*, 161 F.3d 358, 360-61 (6th Cir. 1998), *cert. denied*, 527 U.S. 1040 (1999).

Petitioner claims his due process rights were violated because there was insufficient credible evidence to support his convictions. Petitioner gives many examples in his petition, all of which were rejected by the Michigan Court of Appeals:

> Defendant first claims on appeal that his convictions for armed robbery were not supported by sufficient evidence, because Ray Floyd, who pleaded guilty to committing the armed robberies, and who identified the defendant as his accomplice, was not a credible witness. It is the province of the jury to assess the credibility of a witness, *People v Lemmon*, 456 Mich 625, 637; 576 NW2d 129 (1998), and in reviewing the sufficiency of the evidence to sustain a criminal conviction, we will not interfere with the jury's credibility determinations. *People v Williams*, 268 Mich App 416, 419; 707 NW2d 624 (2005). Thus, while there may be some evidence to support defendant's assertion that Floyd lied about the name of his accomplice, we will not interfere with the jury's determination that Floyd was a credible witness. *Id.* Accordingly, we reject defendant's argument that his convictions were not supported by sufficient evidence because Floyd was not a credible witness.
>
> Defendant also asserts that his conviction for armed robbery as to Christopher Opfer was not supported by sufficient evidence, because there was no evidence that any property or money was stolen from Opfer's person or in his presence. We disagree. Under MCL 750.529 as amended in 2004, the elements are: (1) the defendant, in the course of committing a larceny of any money or other property that may be the subject of a larceny, used force or violence against any person who was present or assaulted or put the person in fear, and (2) the defendant, in the course of committing the larceny, either possessed a dangerous weapon, possessed an article used or fashioned in a manner to lead any person present to reasonably believe that the article was a dangerous weapon, or represented orally or otherwise that he or she was in possession of a dangerous weapon. *People v Chambers,* 277 Mich App 1, 8;__ NW2d __ (2007).
>
> This 2004 legislative amendment to MCL 750.229 eliminated the previous requirement that the prosecutor establish, as an element of armed robbery, that the felonious taking of property was from "the complainant's person or in his presence."
>
> It is undisputed that Opfer was present in the Hardee's restaurant while defendant and Floyd committed a larceny, and there was testimony that defendant possessed a six-inch steak knife during the

4

> course of the larceny. In addition, because Opfer testified that he was scared during the larceny, there was evidence that defendant's actions put Opfer in fear. Accordingly, defendant's argument that his conviction for armed robbery as to Opfer was unsupported by sufficient evidence, because no property was taken from Opfer's person or in his presence, is without merit.

Michigan Court of Appeals' opinion, Docket #27, at 1-2.

A federal court sitting in habeas corpus review of a state criminal trial is to determine whether there was sufficient evidence of the essential elements of the crime to justify *any* rational trier of fact to find guilt beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). The evidence is to be considered in the light most favorable to the prosecution. *Id.* It is clear that the evidence was sufficient to establish that Petitioner committed the crime. The Michigan Court of Appeals decision was not contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States; or did not result in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.

Petitioner asserts that the trial court erred when it failed to suppress evidence obtained from an unreasonable search and seizure in violation of Petitioner's constitutional and statutory rights. Petitioner contends that the conversation overheard by the police between Petitioner and co-defendant Floyd was private and that the police were eavesdropping. The Michigan Court of Appeals disagreed:

> Defendant next claims on appeal that the trial court erred in denying his motion to suppress evidence of the conversation between Detectives James Millin and Richard Krueger, overheard while standing outside the front door to Belinda McMichael's trailer. According to defendant, the "eavesdropping" of Millin and Krueger violated his Fourth Amendment right against unreasonable searches and seizures, and MCL 750.539c, which prohibits eavesdropping on a private conversation. We review a trial court's ultimate decision on

5

a motion to suppress de novo, but its factual findings are reviewed for clear error. *People v Wilkens*, 267 Mich App 728, 732; 705 NW2d 728 (2005).

The United States Constitution and the Michigan Constitution protect a person against unreasonable searches and seizures. US Const, AM IV; Const 1963, art 1, § 11; *People v Taylor*, 253 Mich App 399, 403; 655 NW2d 291 (2002). The Fourth Amendment protects oral statements. *People v Hoffa*, 385 US 293, 301; 87 S Ct 408; 17 L Ed 2d 374 (1966). However, not all seizures of oral statements implicate the Fourth Amendment. *Taylor, supra* at 404. What a person knowingly exposes to the public, even in his own home or office, is not a subject of Fourth Amendment protection. *People v Cantania*, 427 Mich 447, 462; 398 NW2d 343 (1986). In *United States v Llanes*, 398 F2d 880, 884 (CA 2, 1968), The United States Court of Appeals held that, because a conversation carried-on in voices loud enough to be heard outside the home, is a conversation knowingly exposed to the public, the defendant had no reasonable expectation of privacy in the conversation. Based on *Llanes*, the trial court held that Millin and Krueger did not violate defendant's Fourth Amendment protection against unreasonable searches and seizures.

Defendant argues that the trial court erred in relying on *Llanes*, because, unlike the narcotics agents in *Llanes*, who were lawfully in the apartment building when they overheard the conversation, Millin and Krueger were trespassers when they overheard the conversation among defendant, Floyd, McMichael, and Tasha Grahl. According to defendant, Millin and Krueger became trespassers when they left the "trailer park roadway," to approach the trailer's front door. "A trespass is an unauthorized invasion upon the private property of another." See *American Transmission, Inc v Channel 7 of Detroit, Inc*, 239 Mich App 695, 705; 609 NW2d 607 (2000). Defendant has failed to cite any authority to support his assertion that, when police officers approach a private residence, and stand outside the front door of the residence, the officers made an "unauthorized invasion" onto the private property of another. An appellant may not merely announce his position and leave it to this Court to discover and rationalize the basis for his claims, nor may he give only cursory treatment, with little or not citation of supporting authority. *People v Kelly,* 231 Mich App 627, 640-641; 588 NW2d 480 (1998). Defendant has, therefore, abandoned the argument that Millin and Krueger were trespassers. See *People v Harris,* 261 Mich App 44, 50; 680 NW2d 17 (2004). Accordingly, we reject defendant's argument that Millin and Krueger were trespassers, and thus, the argument that the trial court erred in relying on *Llanes*. Because

6

> defendant has not established that the detectives were trespassers when they overheard the conversation in the mobile home from the approach to the mobile home's front door, we conclude that defendant's fourth amendment rights were not violated.

Michigan Court of Appeals' order, Docket #27, at 2-3. In the opinion of the undersigned, petitioner's claim is subject to dismissal under the rule announced in *Stone v. Powell*, 428 U.S. 465 (1976). In *Stone*, the Supreme Court concluded that "where the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim, the Constitution does not require that a state prisoner be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at his trial." *Id.* at 482. In *Riley v. Gray*, 674 F.2d 522 (6th Cir.), *cert. denied*, 459 U.S. 948 (1982), the Sixth Circuit interpreted *Stone* as requiring the district court to make two distinct inquiries in habeas proceedings:

> Initially, the district court must determine whether the state procedural mechanism, in the abstract, presents the opportunity to raise a fourth amendment claim. *Williams v. Brown*, 609 F.2d 216, 220 (5th Cir. 1980). Second, the court must determine whether presentation of the claim was in fact frustrated because of a failure of that mechanism. *See Boyd v. Mintz*, 631 F.2d 247, 250 (3rd Cir. 1980); *Gates v. Henderson*, 568 F.2d 830, 840 (2nd Cir. 1977) (*en banc*), *cert. denied*, 434 U.S. 1038, 98 S.Ct. 775, 54 L.Ed.2d 787 (1978).

*Id.* at 526 (footnote omitted). The record reveals no reason why petitioner would have been prevented from raising his Fourth Amendment claims in the state courts. Indeed, petitioner did have the opportunity to raise these issues in the state courts where they were rejected. Accordingly, in the opinion of the undersigned, petitioner is precluded from raising this claim under the rule announced in *Stone v. Powell*.

Petitioner claims that the trial court erred when it allowed expert testimony into evidence. Petitioner argues that the expert testimony given by a shoe pattern expert was prejudicial. The Michigan Court of Appeals rejected this argument:

> Defendant next claims on appeal that the trial court erred in allowing Officer Kevin Kosten to present improper expert testimony. We disagree with defendant's assertion, and review this unpreserved evidentiary issue for plain error affecting defendant's substantial rights, *People v Bauder*, 269 Mich App 174, 180; 712 NW2d 506 (2005).
>
> Kosten testified that, upon seeing the pattern on the sole of McMichael's hiking boots, he immediately recognized the pattern as matching one of the sets of foot impressions left by the two armed robbers in the Hardee's parking lot. Kosten's testimony was not expert testimony. It was not based on any "scientific, technical, or other specialized knowledge." MRE 702. Rather, it was based solely on his visual perceptions, and his recognition was made immediately upon seeing the pattern on the soles of the hiking boots.
>
> We also reject defendant's claim that Kosten's testimony was irrelevant. Because it was not uncommon for defendant to wear McMichael's hiking boots, Kosten's testimony made it more probable than not that defendant committed the armed robberies with Floyd. MRE 401. In addition, defendant's claim that Kosten's testimony was unfairly prejudicial, because jurors give "high credence" to experts, is baseless. Kosten did not testify as an expert, nor give expert testimony.

Michigan Court of Appeals' order, Docket #27, at 5. Petitioner contends that the trial court abused its discretion when it admitted the evidence because probative value was outweighed by the prejudicial effect contrary to Michigan state law. However, "such an inquiry . . . is no part of a federal court's habeas review of a state conviction." *Estelle v. McGuire*, 502 U.S. 62, 67 (1991). In *Estelle v. McGuire*, the Supreme Court addressed the issue of whether the admission of evidence in violation of California law entitled a petitioner to habeas corpus relief.

> We have stated many times that "federal habeas corpus relief does not lie for errors of state law." *Lewis v. Jeffers*, 497 U.S. 764, 780, 110

> S. Ct. 3092, 3102, 111 L. Ed. 2d 606 (1990); see also *Pulley v. Harris*, 465 U.S. 37, 41, 104 S. Ct. 871, 874-75, 79 L. Ed. 2d 29 (1984). Today, we reemphasize that it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions. In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States. 28 U.S.C. § 2241; *Rose v. Hodges*, 423 U.S. 19, 21, 96 S. Ct. 175, 177, 46 L. Ed. 2d 162 (1975) (per curiam).

*Estelle v. McGuire*, 502 U.S. at 67-8. The appropriate inquiry is whether the allegedly improper admission of evidence violated the petitioner's constitutional rights. *Estelle v. McGuire*, 502 U.S. at 68. A federal court will grant habeas corpus relief only where a violation of the state's evidentiary rule results in the denial of fundamental fairness, and therefore, a violation of due process. *Brown, III v. O'Dea*, 187 F.3d 572, 578 (6th Cir. 1999) (citing *Cooper v. Sowders*, 837 F.2d 284, 287 (6th Cir. 1988)).

> "The standard in determining whether the admission of prejudicial evidence constitutes a denial of fundamental fairness is whether the evidence is 'material in the sense of a crucial, critical highly significant factor.'" *Leverett v. Spears*, 877 F.2d 921, 925 (11th Cir. 1989) (quoting *Redman v. Dugger*, 866 F.2d 387, 390 (11th Cir. 1989)).

*Brown, III v. O'Dea*, 187 F.3d at 578. In the opinion of the undersigned, Petitioner cannot show a violation of his rights from the admission of this testimony. Moreover, the Michigan Court of Appeal's decision was not unreasonable.

Petitioner claims that his rights were violated due to prosecutorial misconduct. Petitioner claims that the prosecution committed misconduct when it failed to disclose evidence affecting the credibility of a witness. Petitioner claims that prosecution acted in a prejudicial manner when it omitted certain details involving the sentence reduction co-defendant Floyd was given in exchange for his testimony. The Michigan Court of Appeals disagreed:

9

> Defendant further claims on appeal that the prosecutor denied him a fair trial, resulting in a deprivation of his liberty without due process of law. We review unpreserved claims of prosecutorial misconduct for plain error affecting the defendant's substantial rights. *People v Goodin*, 257 Mich App 425, 431; 668 NW2d 392 (2003).
>
> Defendant first asserts that the prosecutor, in violation of her duty under *Brady v Maryland*, 373 US 83; 83 S Ct 1194; 10 L Ed 2d 215 (1963), failed to inform the jury that Floyd, upon pleading guilty to armed robbery, and agreeing to testify truthfully against defendant, received a significant reduction in his minimum sentence. Under *Brady*, the prosecution must disclose to the defendant evidence in its possession that is exculpatory and material, regardless of whether the defendant requests the disclosure. *People v Schumacher*, 276 Mich App 165, 176; 740 NW2d 534 (2007). The *Brady* requirement covers impeachment evidence, including the contents of pleas agreement with key government witnesses. *Giglio v United States*, 405 US 150, 153-155; 92 S Ct 763; 31 L Ed 2d 104 (1972); *People v Lester*, 232 Mich App 262, 281; 591 NW2d 267 (1998). Defendant has made no assertion that the prosecution failed to disclose to him the contents of Floyd's plea agreement. Accordingly, there was no *Brady* violation. See *id.* at 281. The prosecution informed the jury that Floyd was testifying pursuant to a plea deal. On cross-examination, defendant could have chosen to elicit the particulars of that deal for the jury, but he did not chose to do so.

Michigan Court of Appeals' order, Docket #27, at 6. Further, Petitioner claims the prosecutor committed misconduct when she deliberately brought out irrelevant and highly prejudicial information and argued facts not admitted into evidence. The Michigan Court of Appeals disagreed with both of these claims:

> Defendant also asserts that the prosecutor denied him a fair trial and caused a deprivation of his liberty without due process, by deliberately requesting the admission of irrelevant evidence, including the maroon sweatshirt found in defendant's bedroom, and the scissors found on McMichael's kitchen counter, and eliciting the irrelevant and highly prejudicial testimony of Krueger, that all four persons inside the trailer were involved in the conversation overheard by officers.
>
> However, a prosecutor's good faith effort to admit evidence does not constitute misconduct. *People v Noble*, 238 Mich App 647, 660; 608

NW2d 123 (1999). The maroon sweatshirt and the scissors were relevant because the maroon sweatshirt matched the color of the sweatshirt worn by one of the armed robbers, and the scissors contained the same identifying mark as the knife used by one of the armed robbers. Accordingly, this evidence made it more probable that defendant committed the armed robberies with Floyd. MRE 401.

Similarly, Krueger's testimony was relevant. Krueger's conclusion, which was proper testimony from a lay witness, because it was based on Krueger's aural perceptions, MRE 701, made it less probable that Floyd was merely telling the other three occupants about the armed robberies. In addition, Krueger's testimony was not unfairly prejudicial because it did not inject considerations extraneous to the merits into defendant's trial. *People v Pickens*, 446 Mich 298, 337; 521 NW2d 797 (1994). Because the challenged evidence and testimony were admissible, we cannot say the prosecutor acted in bad faith, in either requesting the admission of the sweatshirt and scissors, or in eliciting Krueger's testimony. *People v Dobek*, 274 Mich App 58, 70; 732 NW2d 546 (2007).

Defendant further argues that the prosecutor engaged in misconduct when she assumed facts not in evidence during her closing statement. We disagree.

In a closing statement, a prosecutor may argue the evidence and all reasonable inferences arising therefrom, *Kelly, supra* at 641, but may not make a statement of fact unsupported by evidence. *People v Fisher,* 193 Mich App 284, 291; 483 NW2d 452 (1992).

Here, the prosecutor did not assume facts in evidence when she told the jury that Floyd did not receive a great plea agreement. Floyd testified that he pleaded guilty to armed robbery, and received a reduced sentence. The prosecutor was comparing Floyd's situation to a person who pleads guilty to a lesser crime, and receives no prison sentence. And, based on this comparison, Floyd did not get a great plea agreement. The prosecutor also did not assume facts in evidence when she told the jury that the witnesses were testifying to information that defendant did not want it to hear. Numerous witnesses, especially Floyd, provided testimony that incriminated defendant. Because defendant denied any participation in the armed robberies, it was reasonable to infer that defendant did not want the jury hearing the witnesses' testimony. In addition, contrary to defendant's assertion, the prosecutor never told the jury that Floyd was not smart enough to come up with a plan to incriminate defendant. Rather, the prosecutor argued that, based on the evidence,

11

> Floyd was a credible witness. A prosecutor may argue that a witness is credible. *People v Howard*, 226 Mich App 528, 548; 575 NW2d 16 (1997).
>
> According to defendant, the prosecutor also assumed facts not in evidence on two occasions, when she argued to the jury that, before Millin and Krueger were able to knock on the door to McMichael's trailer, they overheard a conversation coming from inside the trailer, and when she also argued that Kosten found a set of hiking boots that matched one set of the foot impressions in the Hardee's parking lot. These statements were made in the prosecutor's opening statement, not in her closing argument. "Opening [statements are] the appropriate time to state the facts to be proven at trial." *People v Johnson*, 187 Mich App 621, 626; 468 NW2d 307 (1991). Based on a review of the record, the prosecutor's statements accurately forecasted the testimony elicited from Millin, Krueger, and Kosten. The prosecutor did not deny defendant a fair trial or cause a deprivation of his liberty without due process, either by assuming facts not in evidence or my misrepresenting the facts she planned to elicit at trial.

Michigan Court of Appeals' order, Docket #27, at 6-7. Petitioner has failed to show how his rights were violated or that any prejudice resulted from these alleged errors. Ultimately, the issue for the Court is whether the prosecutor's conduct denied petitioner a fundamentally fair trial. *Smith v. Phillips*, 455 U.S. 209, 219, 102 S. Ct. 940 (1982). *See also United States v. Carroll*, 26 F.3d 1380 (6th Cir. 1994) (adopting test for evaluation of prosecutorial misconduct on direct review); *Serra v. Michigan Department of Corrections*, 4 F.3d 1348 (6th Cir. 1993) (applying similar test to habeas action). Inappropriate remarks or conduct by a prosecutor constitute a matter of constitutional concern only when it is egregious enough to deprive the defendant of a fair trial. *See United States v. Chambers*, 944 F.2d 1253 (6th Cir.), *cert. denied*, 112 S. Ct. 1217 (1992); *United States v. Mohney*, 949 F.2d 1397, 1400 (6th Cir. 1991), *cert. denied*, 112 S. Ct. 1940 (1992); *Paprocki v. Foltz*, 869 F.2d 281 (6th Cir. 1989). The Michigan Court of Appeals' decision on the prosecutorial misconduct issue was not contrary to, or involved an unreasonable application of, clearly established

federal law as determined by the Supreme Court of the United States; or did not result in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.

Petitioner contends that improper scoring of the legislatively imposed sentencing guidelines were used. Claims concerning the improper scoring of sentencing guidelines are state-law claims and typically are not cognizable in habeas corpus proceedings. *See Hutto v. Davis*, 454 U.S. 370, 373-74 (1982) (federal courts normally do not review a sentence for a term of years that falls within the limits prescribed by the state legislature); *Austin v. Jackson*, 213 F.3d 298, 301-02 (6th Cir. 2000) (alleged violation of state law with respect to sentencing is not subject to federal habeas relief); *Cheatham v. Hosey*, No. 93-1319, 1993 WL 478854, at *2 (6th Cir. Nov. 19, 1993) (departure from sentencing guidelines is an issue of state law, and, thus, not cognizable in federal habeas review); *Cook v. Stegall*, 56 F. Supp. 2d 788, 797 (E.D. Mich. 1999) (the sentencing guidelines establish only rules of state law). There is no constitutional right to individualized sentencing. *Harmelin v. Michigan*, 501 U.S. 957, 995 (1991); *United States v. Thomas*, 49 F.3d 253, 261 (6th Cir. 1995); *see also Lockett v. Ohio*, 438 U.S. 586, 604-05 (1978). Moreover, a criminal defendant has "no federal constitutional right to be sentenced within Michigan's guideline minimum sentence recommendations." *Doyle v. Scutt*, 347 F. Supp. 2d 474, 485 (E.D. Mich. 2004); *accord Lovely v. Jackson*, 337 F. Supp. 2d 969, 977 (E.D. Mich. 2004); *Thomas v. Foltz*, 654 F. Supp. 105, 106-07 (E.D. Mich. 1987).

Although state law errors generally are not reviewed in a federal habeas proceeding, an alleged violation of state law "could, potentially, 'be sufficiently egregious to amount to a denial of equal protection or of due process of law guaranteed by the Fourteenth Amendment.'" *Koras v. Robinson,* 123 F. App'x 207, 213 (6th Cir. Feb. 15, 2005) (citing *Bowling v. Parker*, 344 F.3d 487,

521 (6th Cir. 2003)). *See also Doyle*, 347 F. Supp. 2d at 485 (a habeas court "will not set aside, on allegations of unfairness or an abuse of discretion, terms of a sentence that is within state statutory limits unless the sentence is so disproportionate to the crime as to be completely arbitrary and shocking.") (citation omitted). A sentence may violate due process if it is based upon material "misinformation of constitutional magnitude." *Koras,* 123 F. App'x at 213 (quoting *Roberts v. United States,* 445 U.S. 552, 556 (1980)); *see also United States v. Tucker,* 404 U.S. 443, 447 (1972); *Townsend v. Burke,* 334 U.S. 736, 741 (1948). To prevail on such a claim, the petitioner must show (1) that the information before the sentencing court was materially false, and (2) that the court relied on the false information in imposing the sentence. *Tucker*, 404 U.S. at 447; *United States v. Polselli*, 747 F.2d 356, 358 (6th Cir. 1984). *Koras,* 123 F. App'x at 213 (quoting *United States v. Stevens,* 851 F.2d 140, 143 (6th Cir. 1988)). A sentencing court demonstrates actual reliance on misinformation when the court gives "explicit attention" to it, "found[s]" its sentence "at least in part" on it, or gives "specific consideration" to the information before imposing sentence. *Tucker*, 404 U.S. at 444, 447.

> Rejecting Petitioner's claims, the Michigan Court of Appeals explained:
>
> Defendant next claims on appeal that the trial court erred in scoring 15 points for offense variable (OV) 8, MCL 777.38, and ten points for OV 14, MCL 777.44. At the outset, we reject defendant's argument that the trial court improperly engaged in judicial fact finding, thus violating his Sixth Amendment right to trial by a jury of his peers, as articulated by *Blakely v Washington*, 542 US 296; 124 S Ct 2531; 159 L Ed 2d 403 (2004). *Blakely* does not affect Michigan's indeterminate sentencing scheme. *People v McCuller*, 479 Mich 672, 676-678; 739 NW2d 563 (2007).
>
> Defendant asserts there was no evidence in the record to support the trial court's scoring of OV 8 and OV 14. We review a trial court's scoring decisions for an abuse of discretion. *People v Cox*, 268 Mich App 440, 453-454; 709 NW2d 152 (2005). We will uphold a scoring decision for which there is any evidence of support. *Id.*

> A trial court may score 15 points for OV 8 "if a victim was asported to another place of greater danger or to a situation of greater danger." MCL 777.38(1)(a). A victim is asported to a place of greater danger when she is removed from a place of relative safety and taken to a place of greater isolation, even if the two places are in the building. See *People v Hack*, 219 Mich App 299, 313; 556 NW2d 187 (1996) (opinion by Sawyer, P.J.), disapproved on other grounds *People v Harmon*, 248 Mich App 522 (2001); *People v Piotrowski*, 211 Mich App 527, 529; 536 NW2d 293 (1995). Defendant and Floyd moved Vanarsdell from the "frontline," an area which could be seen by a person passing by outside, to the break room, a more isolated room, because it could not be seen from the outside. Accordingly, there is evidence in the record to support the trial court's scoring of OV 8. We affirm the trial court's scoring of OV 8. *Cox, supra.*
>
> Ten points may be scored for OV 14, if "[t]he offender was a leader in a multiple offender situation." MCL 777.44(1)(a). There is evidence in the record to support the trial court's finding that defendant was the leader. Floyd testified that it was defendant's idea to rob the restaurant; defendant took Vanarsdell's cellular phone and keys; and defendant did most of the talking inside the restaurant. Accordingly, we affirm the trial court's scoring of OV 14. *Cox, supra.*

Michigan Court of Appeals' order, Docket #27, at 8. Petitioner's sentence clearly is not so disproportionate to the crime as to be arbitrary or shocking. *Doyle*, 347 F. Supp. 2d at 485. The state court's rejection of Petitioner's claim was not based on an unreasonable determination of the facts and was neither contrary to nor an unreasonable application of established Supreme Court precedent. 28 U.S.C. § 2254(d).

Petitioner claims he received ineffective assistance of counsel. Petitioner argues that his trial counsel failed to object to hearsay statements, failed to make an opening statement, and failed to object to statements made by an expert witness. To prevail on an ineffective assistance of counsel claim, a convicted defendant must demonstrate (1) that counsel's errors were so serious that counsel was not functioning as counsel guaranteed by the Sixth Amendment, and (2) that there is a

reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Strickland v. Washington*, 466 U.S. 668, 688-96 (1984). Stated another way, this court is to decide whether petitioner's trial counsel's alleged failures were such egregious errors as to constitute ineffectiveness and whether the alleged failures were materially prejudicial. The Sixth Circuit has explained:

> The question for reviewing courts is whether counsel's errors have likely undermined the reliability of, and confidence in, the result. *Lockhart v. Fretwell*, 113 S.Ct. 838, 842-43 (1993). "An error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the [ultimate] judgment." *Strickland*, 466 U.S. at 691, *quoted in Smith v. Jago*, 888 F.2d 399, 404-05 (6th Cir. 1989), *cert. denied*, 495 U.S. 961 (1990). In evaluating petitioner's claim, "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689. "Counsel is constitutionally ineffective only if performance below professional standards caused the defendant to lose what he otherwise would probably have won." *United States v. Morrow*, 977 F.2d 222, 229 (6th Cir. 1992) (*en banc), cert. denied*, 113 S. Ct. 2969 (1993). Thus, the determinative issue is not whether petitioner's counsel was ineffective but whether he was so thoroughly ineffective that defeat was "snatched from the jaws of victory." *See id.*

*West v. Seabold,* 73 F.3d 81, 84 (6th Cir. 1996). The Michigan Court of Appeals rejected Petitioner's claims, concluding:

> Defendant's last argument on appeal is that he was deprived of his constitutional right to counsel, because he did not receive effective assistance of appointed counsel. Because defendant did not move for a new trial or for a *Ginther* hearing, our review of defendant's claims is limited to errors apparent on the record. *People v Rodriguez*, 251 Mich App 10, 38; 60 NW2d 96 (2002).
>
> To establish a claim for ineffective assistance of counsel, a defendant must prove that his counsel's performance was deficient and that, under an objective standard of reasonableness, he was denied his Sixth Amendment right to counsel. *People v Mack*, 265 Mich App 122, 129; 695 NW2d 342 (2005). He must also prove that his counsel's deficient performance was prejudicial to the extent that

16

there is a reasonable probability that, but for counsel's errors, the outcome of his trial would have been different. *People v Carbin*, 463 Mich 590, 600; 623 NW2d 884 (2001).

Defendant argues that his counsel was ineffective for failing to preserve the issues which we have reviewed for plain error. However, as analyzed above, defendant's arguments (regarding whether Kosten's testimony that he immediately recognized the pattern of the sole of McMichael's hiking boots to match one set of the foot impressions was irrelevant, unfairly prejudicial, and improper expert testimony; whether defendant's statement that he ran because having not committed the armed robberies, he did not want to go to prison; and whether the prosecutor engaged in misconduct), are meritless. It was well established that counsel is not ineffective for failing to make a meritless or futile motion. *People v Fike,* 228 Mich App 178, 182; 577 NW2d 903 (1998). In addition, defendant has failed to prove that, had counsel made the objections, the outcome of his trial would have been different. *Carbin, supra.*

Defendant also argues that counsel was ineffective for failing to object when detective Millin allegedly testified to out-of-court statements by Floyd. Detective Millin testified that he and detective Krueger interviewed Floyd after his arrest. We agree with the prosecution that Millin did not testify to out-of-court statements by Floyd. Rather, the prosecutor merely asked questions to determine whether the police had pressured Floyd into implicating the defendant. Thus, any objection by defense counsel would have been futile.

Defendant also argues that his counsel was ineffective for failing to object when McMichael testified to Floyd's statements. We disagree. The testimony cited by defendant is McMichael's testimony that, immediately afer the time of the crime, Floyd "comes in huffing and puffing saying he robbed it and knocked a dude over...." Again, we agree with the prosecution's argument, in its well prepared brief, that this hearsay was admissible under the excited utterance exception, MRE 803(3), and under the present sense impression exception, MRE 803(1). We also agree with the prosecution that this testimony was cumulative to Floyd's own testimony, since Floyd implicated himself in his testimony.

Also, because defendant has not shown that any objection to these out-of-court statements would have been sustained, we reject defendant's argument. As just stated, counsel is not ineffective for failing to make a meritless or futile motion. *Fike, supra.*

> Finally, we reject defendant's claim that counsel was ineffective for failing to make an opening statement. The decision to waive an opening statement is a matter of trial strategy, *People v Calhoun*, 178 Mich App 517, 524; 444 NW2d 232 (1989), and we will not second-guess counsel on matters of trial strategy, *People v Odom*, 276 Mich App 407, 415; 740 NW2d 557 (2007). Defendant was not denied the effective assistance of counsel. (Docket #27).

Michigan Court of Appeals' order, Docket #27, at 8-9. In the opinion of the undersigned, the Michigan Court of Appeals' decision was not contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States; or did not result in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.

In summary, the undersigned concludes that Petitioner's claims are without merit and therefore recommends that this Court dismiss the petition with prejudice.

In addition, if Petitioner should choose to appeal this action, I recommend that a certificate of appealability be denied as to each issue raised by the Petitioner in this application for habeas corpus relief. Under 28 U.S.C. § 2253(c)(2), the court must determine whether a certificate of appealability should be granted. A certificate should issue if Petitioner has demonstrated a "substantial showing of a denial of a constitutional right." 28 U.S.C. § 2253(c)(2).

The Sixth Circuit Court of Appeals has disapproved issuance of blanket denials of a certificate of appealability. *Murphy v. Ohio*, 263 F.3d 466 (6th Cir. 2001). Rather, the district court must "engage in a reasoned assessment of each claim" to determine whether a certificate is warranted. *Id.* Each issue must be considered under the standards set forth by the Supreme Court in *Slack v. McDaniel*, 529 U.S. 473 (2000). *Murphy*, 263 F.3d at 467. Consequently, the undersigned has examined each of Petitioner's claims under the *Slack* standard.

Under *Slack*, 529 U.S. at 484, to warrant a grant of the certificate, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." The undersigned concludes that reasonable jurists could not find that a dismissal of each of Petitioner's claims was debatable or wrong. Therefore, the undersigned recommends that the court deny Petitioner a certificate of appealability.

NOTICE TO PARTIES: Objections to this Report and Recommendation must be served on opposing parties and filed with the Clerk of the Court within fourteen (14) days of receipt of this Report and Recommendation. 28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b); W.D. Mich. LCivR 72.3(b). Failure to file timely objections constitutes a waiver of any further right to appeal. *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). *See also Thomas v. Arn*, 474 U.S. 140 (1985).

    /s/ Timothy P. Greeley
TIMOTHY P. GREELEY
UNITED STATES MAGISTRATE JUDGE

Dated: August 25, 2011